IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF TEXAS
                              FORT WORTH DIVISION

GALDERMA LABORATORIES, L.P.       §
                                  §
VS.                               §  CIVIL ACTION NO.4:06-CV-822-Y
                                  §
DIMENSIONAL HEALTHCARE, INC.,     §
ET AL                             §

                    ORDER DENYING MOTION TO DISMISS

    Plaintiff Galderma Laboratories, L.P. ("Galderma"), filed the above-styled and -numbered suit for declaratory relief and alleging claims of breach of contract, quantum meruit, unjust enrichment, negligent misrepresentation, and fraud. In response, defendant Aquent, Incorporated ("Aquent"), filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

    The principle issue in this motion concerns the interpretation of a contract provision obligating Galderma to reimburse defendant Dimensional Healthcare, Incorporated ("Dimensional"), for certain costs and expenses incurred when performing under the contract. Galderma contends that the contract requires Dimensional to have first paid those costs and expenses before seeking reimbursement from Galderma. (Pl.'s Resp. Mot. Dismiss at 2.) Aquent, on the other hand, contends that the contract requires Galderma to reimburse Dimensional for expenses or costs Dimensional has incurred while performing on a work order, but that there is no requirement that Dimensional actually pay those costs prior to seeking reimbursement. (Def.'s Mot. Dismiss at 4.) After review, the Court concludes that the express terms of the contract do not

unambiguously support Aquent's interpretation that Dimensional was not required to first pay for the costs and expenses incurred before seeking reimbursement. Accordingly, Aquent's motion to dismiss should be DENIED.

I.  Factual Background[1]

Galderma is a pharmaceutical company that specializes in developing and producing products to treat skin conditions. As part if its product development, Galderma contracts with other companies to manage the clinical trials of its products on its behalf. Dimensional is one such company.

Dimensional and Galderma entered into a contract called the "Master Services Agreement" ("the Agreement"). Galderma attached a copy of the Agreement to its complaint. The purpose of the Agreement was "to provide terms and conditions upon which Galderma may engage [Dimensional] from time-to-time to provide services or projects by executing individual work orders . . . ." (Pl.'s Compl. Ex. A.) The Agreement was designed to be the "master form of contract" so that "the parties [could] contract for multiple projects through the issuance of multiple work orders . . . without having to re-negotiate the basic terms and conditions contained" in the Agreement. (*Id.*)

---

[1] For purposes of resolving Aquent's motion to dismiss under Rule 12(b)(6), the Court will accept as true the factual assertions and allegations in Galderma's complaint. *See Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

2

Section 2.0 of the Agreement provides,

> **Payment of Fees and Expenses** . . . . Galderma will pay [Dimensional] for fees, expenses, and pass-through costs in accordance with each work order. Unless otherwise agreed to in a particular work order, the following shall apply:
>
> 2.1 Galderma shall reimburse [Dimensional] for all reasonable and necessary expenses and pass-through costs, net of discounts, incurred in the performance of the services subject to any amount limitation set forth in the work order;
>
> 2.2 [Dimensional] will invoice Galderma monthly for the fees, expenses, and pass-through costs relating to the project . . . .

(Pl.'s Compl. Ex. A at 2.)  Galderma claims that

> Sections 2.1 and 2.2 of the Agreement reflect the understanding of the parties that, while managing and overseeing clinical trials on behalf of Galderma, Dimensional would incur costs from service providers and other creditors, and that upon Dimensional's promise and representation that it had paid such costs, Galderma would reimburse Dimensional.

(Pl.'s Compl. at 3.)

Galderma alleges that under the Agreement, Dimensional received reimbursement from Galderma for costs and expenses Dimensional represented it paid while overseeing clinical trials conducted on Galderma's behalf.  By submitting invoices for reimbursement of costs and expenses, Galderma contends that Dimensional represented to it that Dimensional had paid these costs and expenses, which were necessary for performing under the work

3

order.  In reliance on such representations, Galderma promptly paid Dimensional's invoices.

Galderma has subsequently discovered that, contrary to Dimensional's representations, Dimensional never paid many of the costs and expenses it invoiced to Galderma even though Galderma reimbursed Dimensional for them.  Exercising its rights under the Agreement, Galderma inspected Dimensional's books and records and discovered that the amount of unpaid but reimbursed costs and expenses easily exceeded $1,000,000.

Aquent is a financing company that purchases accounts receivable from businesses at a discounted rate.  Dimensional sold to Aquent certain of its receivables, some of which include invoices to Galderma.  After purchasing the receivables, Aquent attempted to collect on the invoices billed to Galderma even though all of the receivables currently held by Aquent are for reimbursement of costs and expenses that Dimensional has never paid.

Based on the foregoing, Galderma brought suit against Dimensional and its chief executive officer, Michael Morales (under an alter-ego theory), for breach of contract, quantum meruit, unjust enrichment, negligent misrepresentation, and fraud. Galderma also sued Aquent seeking a declaratory judgment that under the Agreement, it has no obligation to reimburse Dimensional on its outstanding invoices, and thus in turn, has no obligation to pay Aquent.

4

II.  Analysis

    A.  Standard

A motion to dismiss under Rule 12(b)(6) for a failure to state a claim "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)(internal quotations and citations omitted). The court must accept as true all well pleaded, non-conclusory allegations in the complaint, must liberally construe the complaint in favor of the plaintiff, and resolve all doubts in the plaintiff's favor. *See Kaiser Aluminum*, 677 F.2d at 1050; *Collins, et al. v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000). But conclusory allegations, unwarranted deductions of fact, or "legal conclusions masquerading as factual [allegations] will not suffice to prevent [the granting of] a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *see Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997); *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 930 (5th Cir. 1995). A court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt from the face of the plaintiff's pleadings that he cannot prove any set of facts in support of his claim that would entitle

him to relief.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Garrett v. Commonwealth Mortgage Corp.*, 938 F.2d 592, 594 (5th Cir. 1991); *Kaiser Aluminum*, 677 F.2d at 1050.

> The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 (5th Cir. 2002).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins,* 224 F.3d at 498; FED.R.CIV.P. 12(b)(6).  Documents a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.  *Collins,* 224 F.3d at 498-99.  "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."  *Id.* at 499.

B.  Discussion

As noted above, the crux of Galderma's complaint and of Aquent's motion to dismiss is the interpretation of the Agreement's requirement that Galderma reimburse Dimensional for its costs and

6

expenses incurred while performing on a specific work order. Does the Agreement require Dimensional to first pay or suffer the necessary costs and expenses before being entitled to reimbursement from Galderma? Because a motion to dismiss for the failure to state a claim requires the Court to make all reasonable inferences and to resolve all factual disputes in Galderma's favor, the Court would need to conclude that the Agreement's provision unambiguously supports Aquent's interpretation in order to rule in Aquent's favor. If the provision unambiguously supports Galderma's interpretation or is ambiguous and can support either party's construction, then the Court must rule in Galderma's favor.

In their pleadings, both parties cite the substantive law of Texas on breach of contract and contract interpretation. But paragraph 24.0 of the Agreement provides, "This Master Agreement shall be construed, governed, interpreted, and applied in accordance with the laws of the State of New York exclusive of its conflicts of laws provision." (Pl.'s Compl. Ex. A at 11.) "To determine the applicable law, a federal court sitting in diversity applies the choice-of-law rules of the forum." *Benchmark Electronics, Inc. v. J.M. Huber Corporation,* 343 F.3d 719, 726 (5th Cir. 2003). That means Texas choice-of-law rules apply. With certain exceptions not applicable here, "Texas law gives effect to choice-of-law clauses regarding construction of a contract." *Id.; In re J.D. Edwards World Solutions Company,* 87 S.W.3d 546, 549 (Tex.

7

2002). The Court, therefore, will apply New York law for purposes of interpreting and construing the Agreement.

Under New York law, the initial interpretation of a contract is a question of law for the Court to decide. *K. Bell & Assoc., Inc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2nd Cir. 1996). This necessarily implies that the Court must first determine whether the contract terms are ambiguous. *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2nd Cir. 1990).

> An ambiguity exists where the terms of a contract could suggest "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 916 (2nd Cir. 1997). Ambiguity with respect to the meaning of contract terms can arise either from the language itself or from inferences that can be drawn from [its] language.

*Id.* A contract is not ambiguous, however, simply because the parties urge different interpretations. *Seiden Associates v. ANC Holdings, Inc.,* 959 F.2d 425, 428-29 (2nd Cir. 1992).

If the Court concludes that the contract is ambiguous, then it may avail itself of any relevant extrinsic evidence to aid in the determination of the meaning intended by the parties during the contract's formation. *Id.* Thus, the "construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim." *Microtel*

8

*Franchise & Dev. Corp. v. Country Inn Hotel,* 923 F. Supp. 415, 420 (W.D.N.Y. 1996)(internal quotations and citations omitted).

Conversely, a contract is not ambiguous when the language has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion." *Seiden*, 959 F.2d at 428. If a contract is unambiguous, the Court may not rely on extrinsic evidence. *Id.*

"It is axiomatic under New York law that courts interpret a contract so as to give effect to all of its provisions and cannot and should not accept an interpretation that ignores the interplay of the terms, renders certain terms inoperable, and creates a conflict where one need not exist." *Net2globe International, Inc. v. Time Warner Telecom of New York,* 273 F. Supp.2d 436, 445 (S.D.N.Y. 2003)(internal quotations and citations omitted). The Court's focus when interpreting a disputed contract provision is to give effect to the intentions of the parties entering into the contract. *Metropolitan Life Insurance Company v. RJR Nabisco, Inc.,* 906 F.2d 884, 889 (2nd Cir. 1990).

Applying those principles here, the Court concludes that the disputed provision in the Agreement regarding the reimbursement of expenses incurred does not unambiguously support Aquent's interpretation, but seems to support Galderma's interpretation. Just to reiterate, the disputed provision reads, "Galderma shall **reimburse**

9

[Dimensional] for all reasonable and necessary expenses and pass-through costs, net of discounts, **incurred** in the performance of the services . . . set forth in the work order . . . ." (Pl.'s Compl. Ex. A at 2.)(Emphasis added.)  The parties' dispute regarding the interpretation of this provision focuses on the words "reimburse" and "incurred."

The American Heritage Dictionary defines "incur" to mean,

1. To acquire or come into (something usually undesirable); sustain: *incurred substantial losses during the stock market crash.*

2. To become liable or subject to as a result of one's actions; bring upon oneself: *incur the anger of a friend.*

THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2006), http://dictionary.reference.com/browse/incur (accessed: May 10, 2007).  The same dictionary defines "reimburse" as,

1. To repay (money spent); refund.

2. To pay back or compensate (another party) for money spent or losses **incurred**.

THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, http:// dictionary.reference.com/browse/reimburse (accessed: May 10, 2007)(emphasis added).  While Galderma focuses on the definition of "reimburse," and Aquent focuses on the definition of "incurred," the Court must focus on the meaning of both words in the greater context of the disputed provision and the entire Agreement.

Furthermore, "expense" is defined as, "Charges **incurred** by an

10

employee in the performance of work: *was **reimbursed** for her travel expenses."* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, http://dictionary.reference.com/browse/expense (accessed: May 10, 2007)(emphasis added). And "cost" is defined as, "An amount paid or required in payment for a purchase; a price." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, http:// dictionary.reference.com/browse/cost (accessed: May 10, 2007).

The disputed provision requires Galderma to reimburse (present tense) Dimensional for its costs and expenses incurred (past tense). In light of the definitions above and the fact that the Agreement uses the present tense of the word "reimburse" combined with the past tense of the word "incur", the Court concludes that the disputed provision does not unambiguously support the interpretation that Dimensional did not have to first pay the costs and expenses it incurred before seeking reimbursement. Rather, the provision seems to provide for Galderma to refund or pay Dimensional for all of Dimensional's costs and expenses it paid while performing on the work orders. If one has not paid any costs or expenses, one has not incurred them—just as one has not incurred any travel expenses if one has not paid for them. And one cannot reimburse, repay, or pay back something that was never paid, incurred, or expended in the first place.

Aquent's confusion seems to stem from a part of the definition of "incur" that relates to liabilities—such as to incur debt. But

11

when one has incurred a debt, one has liability, not a cost or expense.  Because of the nature of a debt, one may pay on it in the future and over time, but that does not change the fact that the debt has been incurred.  The same is not true for a cost or expense.  One typically has not incurred a cost or expense until one has paid it.  And if one will never pay for the cost or expense but, instead, may pass it on to a third-party for payment, then one will never actually incur that cost or expense.  That is not what appears to be provided for in the express terms of the Agreement.  Instead, the Agreement seems to contemplate that Dimensional will have to front certain costs and expenses in order to perform under a work order.  Once Dimensional has paid these costs and expenses, it may in turn seek reimbursement from Galderma.

Further frustrating Aquent's interpretation is the phrase in the disputed provision "net of discounts."  This seems to imply that Galderma is only responsible for reimbursing any expenses and costs Dimensional actually paid, not what may have been billed.  Any "discounts" to Dimensional in association with costs and expenses necessary to perform under the work order may not be reflected necessarily in the initial bill Dimensional receives for the cost or expense.  It is quite possible that discounts could be negotiated after the fact.

Finally, Aquent's interpretation is not supported by paragraph 9.0 of the Agreement.  That paragraph declares that Galderma and

Dimensional enjoy an independent-contractor relationship. Dimensional has no power or authority to bind or obligate Galderma and Galderma is not responsible for Dimensional's employees, worker's compensation, benefits, "or any third-party who performs services on behalf of [Dimensional] . . ." pursuant to a work order.  (Pl.'s Compl. Ex. A at 5.)  This independent relationship seems to further evince the parties' intent that Dimensional will be responsible for all costs and expenses incurred and, once paid, may in turn seek reimbursement from Galderma.

III. Conclusion

For the reasons stated above, the Court DENIES Aquent's motion to dismiss (doc. #6).  The Court concludes that the express terms in the disputed provision, when read in context of the entire provision and the Agreement, do not unambiguously support Aquent's interpretation that Dimensional was not required to first pay the costs and expenses it incurred before seeking reimbursement from Galderma.

SIGNED June 13, 2007.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/flg                              13